## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**STACEY HERRINGTON,**

    **Plaintiff,**

                          **Case No.: 4:22-cv-0295-AW-MAF**

**v.**

**FRANKLIN COUNTY SCHOOL BOARD,**
**TRACI MOSES YODER, in her individual**
**capacity, THE APALACHICOLA BAY**
**CHARTER SCHOOL, INC., d/b/a**
**APALACHICOLA BAY CHARTER SCHOOL,**
**and EAGLETREE TECHNOLOGIES LLC, d/b/a**
**EAGLETREE TECHNOLOGIES**

    **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, STACEY HERRINGTON, hereby sues Defendants, FRANKLIN

COUNTY SCHOOL BOARD, TRACI MOSES YODER, in her individual capacity,

THE   APALACHICOLA   BAY   CHARTER   SCHOOL,   INC.,   d/b/a

APALACHICOLA   BAY   CHARTER   SCHOOL   and   EAGLETREE

TECHNOLOGIES, LLC d/b/a EAGLETREE TECHNOLOGIES and alleges:

## NATURE OF THE ACTION

1.    This is a civil action seeking monetary damages, declaratory judgment,

and legal, equitable, and injunctive relief against Defendants brought under the

common law of the State of Florida, the First Amendment to the United States Constitution, brought through 42 U.S.C. §1983 and 42 U.S.C. §1988.

2.      This is an action involving claims which are, individually, in excess of Thirty Thousand Dollars ($30,000).  This case was removed to this Court by the Defendants.

## **PARTIES**

3.      At all times pertinent hereto, Plaintiff, STACEY HERRINGTON, has been a resident of FRANKLIN County, FL. (S)he is *sui juris*.

4.      At all times pertinent hereto, Defendant, FRANKLIN COUNTY SCHOOL BOARD, in has been organized and existing under the laws of the State of Florida. It is *sui juris*.

5.      TRACI MOSES YODER ("YODER"), is sued in her individual capacity and is or was, at all times pertinent to this action, a resident of the State of Florida. She is *sui juris*.

6.      At all times pertinent hereto, Defendant, THE APALACHICOLA BAY CHARTER SCHOOL, INC., d/b/a APALACHICOLA BAY CHARTER SCHOOL, in has been organized and existing under the laws of the State of Florida. It is *sui juris*.

7. At all times pertinent hereto, Defendant EAGLETREE TECHNOLOGIES, LLC d/b/a EAGLETREE TECHNOLOGIES in has been organized and existing under the laws of the State of Florida. It is *sui juris*.

## CONDITIONS PRECEDENT

8. Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were submitted to Defendant pursuant to 768.28(6), Florida Statutes.

## STATEMENT OF THE ULTIMATE FACTS

9. Plaintiff worked at Apalachicola Bay Charter School (ABC School) from July 2007 to August 2015. During this time, Yoder was employed as a teacher.

10. Over the years working for ABC School, Plaintiff reported several unethical practices she observed Yoder engaging in to ABC's Vice Principal, Elizabeth Kirvin. Some of these practices included but were not limited to cheating on standardized tests, bullying students and faculty members and threatening her teaching assistant, Carla Cates, with physical harm.

11. Plaintiff also reported that Yoder engaged in unethical practices that were matters of public concern and it was not part of Plaintiff's job duties to report.

12. Specifically, but without limitation, in 2015, Plaintiff reported to Kirvin and the Principal at ABC School, Chimene Johnson, that Yoder told her that a child in her class was a "little bitch just like her mother" and described ways that she was

retaliating against this child to discipline her for nothing other than Yoder not liking this child and her mother based on the mother asking how a test was graded. Yoder was asked to be present and she was present during this meeting between Kirvin, Johnson and Plaintiff.

13.    During that meeting, Plaintiff also reported that Yoder picked on students by not rewarding them like she did other students, grading their papers harsher than other students and spreading rumors about certain children (one in particular that Yoder stated would grow up to be a women beater) for no legitimate reason other than Yoder not liking the students' parents.

14.    Plaintiff left ABC school in 2015 for health reasons and Yoder became the Superintendent of Franklin County Schools in 2016.

15.    In October 2017, Plaintiff was hired by Eagletree Technologies (Eagletree) as a teacher liaison for Franklin County Schools working for Kevin Ward as the owner of Eagletree.

16.    In the 2018 time period, Plaintiff again began observing unethical employment practices by Yoder, then in her position as Superintendent, and began reporting these practices to various members of the Defendant Franklin County School Board to include Stacy Kirvin (Elizabeth Kirvin's husband) and Pam Marshall.

17.    One of the practices she observed and reported involved cameras that had been installed throughout the consolidated campus of the Franklin County School Board on which she worked for Eagletree. Plaintiff questioned Kevin Ward, her employer, about whether there was audio on the cameras and he told her there was not.

18.    She thereafter inquired with employees at the Franklin County School Board including the Principal, Jill Rudd, and the Maintenance Supervisor and School Safety Supervisor, Rob Wheatley, whether the cameras were recording audio as well as video.  Rudd and Wheatley stated they did not believe there was audio recording on the cameras but they did not know for sure.

19.    Cameras were located virtually everywhere on the consolidated campus and could record private sensitive conversations between students, faculty and teachers.

20.    In her position with Eagletree, Plaintiff then responded to a ticket from the Franklin County School Board on which Franklin County School Superintendent Yoder was copied and, in her response, she inquired as to whether there was audio on the cameras.  Yoder replied that they were not recording audio.

21.    However, Plaintiff discovered through an article in the newspaper, regarding an arrest of a teaching assistant, that Yoder and Ward had not truthfully stated that the cameras were recording audio when they were in fact so recording,

which meant that Yoder could and did covertly observe faculty members, teachers and students and listen to their private conversations. Plaintiff also heard from Maintenance Director Bud Strange ("Strange") that Yoder was listening to conversations between faculty and others from her cell phone.

22.    Plaintiff reported the camera audio issue to Principal Jill Rudd, to the School Safety Specialist Rob Wheatley and to Plaintiff's husband, the Director of Defendant School Board's IT section, Richie Herrington.

23.    Around the 2018 time period, Plaintiff also observed extensive renovations being conducted at the School Board District Office but because of incremental payments, the School Board did not have to approve the expenditures.

24.    Plaintiff's husband at that time told Plaintiff that over $100,000 had been spent through these incremental payments that did not require School Board approval because they were all payments that were under the limit that required School Board approval.

25.    Plaintiff reported the renovation payments that were not approved expenditures to School Board Member, Pam Marshall, and told her at that time that Yoder was avoiding School Board approval for the renovations by breaking the payments up into smaller amounts although they were all part of one larger project. This information was conveyed to Plaintiff by her then husband, who was concerned that these expenditures were made but avoided School Board review.

26.    Around this same time in 2018, teachers reported to Plaintiff that their school emails had been hacked. One of the teachers who reported this to Plaintiff told her that an email thread between this teacher and the Dean of Students had been deleted.  Other teachers told her that service/help tickets to Eagletree had also been deleted.  Richie Herrington told Plaintiff that he knew that school emails were being deleted.

27.    Plaintiff reported the teachers' emails being hacked and deleted to Richie Herrington, and to School Board Member Carl Whaley.

28.    During the Spring 2018, Plaintiff learned that a counselor for Disc Village, Audrey Strange, who was on contract with Defendant School Board, was not properly performing her job and appeared to be a harm to students.

29.    Specifically, Ms. Strange told Plaintiff that she did not have to keep up with any paperwork on children she was supposed to be counseling for drug and alcohol abuse and that she was just hanging out with them.

30.    Plaintiff discussed with the Principal, Jill Rudd, that Ms. Strange may not be qualified to be a counselor.  Plaintiff was later told by Joy Towns, who worked for Rudd and/or Richie Herrington, that Yoder did not appreciate Plaintiff asking about Strange or her position with the School Board.

31.    Towards the end of the 2017/2018 school year, which would have been around May 2018, Plaintiff met with Carl Whatley and five other teachers to report

several issues to Whaley including that students' needs were not being met, funds were being inappropriately distributed, and continued bullying/retaliation of Plaintiff by Superintendent Yoder.

32.    Specifically, by that time, Yoder had been targeting Plaintiff by questioning her hours working with Eagletree and making negative and racist comments about Plaintiff's son dating an African American girl.

33.    During the meeting around May, 2018, referenced in paragraph 31 above, Plaintiff reported being targeted by Yoder, as referenced in paragraph 32 above, and how Yoder bullied and targeted certain teachers who she did not like by instructing Richie Herrington to write certain teachers up, which bullying and targeting information had been given to Plaintiff, primarily, by Richie Herrington.

34.    On June 26, 2018, there was a fire in a low income Eastpoint neighborhood.  Plaintiff clocked out to help primarily the children effected by the fire, and Yoder told Jamie Johnson, an administrative assistant, that Plaintiff was not allowed to pass out shoes designated for homeless children.  Plaintiff had asked the administrative assistant if she could take some of the shoes from the Franklin County School system to students and was told no.

35.    Three weeks later, on June 28, 2018, Plaintiff's employment with Eagletree Technologies was terminated. Her employer, Kevin Ward, informed Plaintiff's husband, Richie Herrington, that Plaintiff was being let go at the

instruction of Superintendent Yoder. Ward told Richie Herrington, who told Plaintiff, that Yoder was "not going to let this go" and that Plaintiff had to go.

36.    Mr. Ward also informed Richie Herrington, who told Plaintiff, that her termination was because she was causing too much trouble.  Ward never told Plaintiff personally why she was fired.  Instead, he gave her last paycheck to Plaintiff's husband and told him to tell Plaintiff she was fired.

37.    Plaintiff was told by Richie Herrington that the Defendant School Board used an alleged comment that Plaintiff made about Yoder as the reason Yoder wanted her fired.  Plaintiff never made the comment which was easily disproven by reviewing the cameras and was used as a ruse for Yoder firing Plaintiff.

38.    Plaintiff was terminated from Eagletree at the direction of Yoder in retaliation for the complaints she made against Yoder when they were still working for the ABC School and for the comments she made in the 2017/2018 school year referenced above, all of which were complaints on matters of public concern involving the misappropriation of public funds as well as students who were being adversely affected by Yoder.  The reporting of Yoder both at ABC School and again when Plaintiff was working for Eagletree Technologies was not part of Plaintiff's job duties.

39.    In August, 2018, after Plaintiff completed a substitute teaching program, Plaintiff applied for and was able to obtain approval as a substitute teacher

by the Franklin County School Board in October 2018 for the Franklin County Schools. Later, the Defendant's Human Resources Director, Karen Petty, told Plaintiff that it was mistake that she was hired as a substitute.

40.    Shortly after Plaintiff's approval, and as soon as Yoder realized her mistake in allowing Plaintiff to be hired as a substitute teacher, Yoder told Kary Rogers, who was responsible for calling substitute teachers, not to call Plaintiff as a substitute although the consolidated school was experiencing a severe shortage of teachers and substitutes.

41.    By October, 2018, Plaintiff learned that the reason that was given to her about not calling her as a substitute, i.e., not needing substitutes, was false.  After she learned of this false reason, Plaintiff met with Karen Peddie in October 2018 who told her that she was cleared from making a false comment about Yoder shortly prior to her termination from Eagletree, as discussed in paragraph 37 above.

42.    Peddie told her that she would be permitted to be a substitute teacher at that point.

43.    In or about November 2018, Plaintiff was hired with the Franklin County Schools as a long-term substitute teacher for a digital design class, which class opened due to a teacher leaving that class.  In that position, Plaintiff reported to Defendant School Board's Administration that Individual Education Plans (IEPs) for disabled students were not being followed.

44.    Specifically, after Plaintiff assumed the position as long-term teacher in the digital design class that had been taught by a non-certified teacher, she found that IEPs were folded up inside folders and were not being followed which impacted student achievement and resulted in accommodations not being given to students who needed them.

45.    Plaintiff reported this IEP problem to the Principal, Jill Rudd, and her husband, Richie Herrington (who could have gotten IT materials to the students that they needed but did not have).    Plaintiff also told Kary Rogers that she was uncomfortable teaching this class when there were no materials to teach the students and minimal grades from the students although they had been in that class for around three months.

46.    In December, 2018, Plaintiff asked to move from the digital design class because of the problems set forth above and requested to move to a media specialist position.    By that time, Plaintiff had been certified as a media specialist and the person in the media specialist position was not certified.

47.    In January 2019, Plaintiff was placed into the media specialist position. She taught classes and ran the library successfully.

48.    Shortly after she started, Principal Rudd told Plaintiff that Superintendent Yoder ordered her to write Plaintiff up and move her out of the media center. Rudd refused to write Plaintiff up and told Superintendent Yoder she would

not be a part of a future lawsuit. Ten days later, Rudd was removed from her position as Principal.

49.    In or about Spring 2019, Plaintiff was in a training class and realized her school account had been hacked. Plaintiff reported the hacking to Richie Herrington and Human Resources Director Karen Petty. Petty told Richie Herrington, who told Plaintiff, that no one with a badge was going to look into Plaintiff's claims. Plaintiff wrote a letter to Human Resources, Karen Petty, saying she was reporting illegal activity about the hacking of school email accounts including her own.

50.    In or about this same time period, Spring 2019, Plaintiff asked Petty if she could fill in for teacher who couldn't be at summer school. Petty said she would she see if she could get it approved.

51.    Plaintiff was not approved at that time.

52.    Thereafter, in June, 2019, when Plaintiff was substitute teaching during the Summer Term, she wrote a letter and hand delivered it to the new Principal, Michael Sneads, at the school. The letter discussed the refusal of the school to investigate the hacking of the email accounts.

53.    After delivering the letter and leaving the school, Plaintiff returned to the school that same day to attempt to get a copy of the letter she had just left at the school but she was told by Vice Principal Shelly Miedonia, that she had to leave and

she then escorted Plaintiff out.  She told Plaintiff she had been ordered to escort her off the school property.

54.     Apparently, someone from the Defendant Franklin County School Board, contacted the Franklin County Sheriff's Office (FCSO) about Plaintiff.

55.     Plaintiff learned about this contact from her daughter, who was told about the Sheriff's Office being called from Richie Herrington.  After Plaintiff learned that FCSO had been called, she returned to the school to meet with the deputy.  Plaintiff's daughter also told her that there was talk about Plaintiff being Baker Acted.

56.     When Plaintiff met with the deputy, she requested that he do a sobriety check on her in which she passed. The deputy did not give her a trespass warning but did return to her home later to inform her to not attend the school board meeting that night.

57.     The following day, FCSO Deputy Jeff Hewitts issued a no trespassing warning for not only ABC School, where her granddaughter was a student, but for any Franklin County School Board property. Hewitts informed Plaintiff that he was given the direction from Superintendent Yoder for both ABC School and the Franklin County School Board property.

58.     In July 2019, Plaintiff's employment was officially terminated by Yoder via a letter with no explanation given.

59.    Plaintiff's inability to be on ABC school campus resulted in her missing special events with her granddaughter. Plaintiff has also been unable to attend school board meetings that are open to the public.

60.    In or about December 2019, Plaintiff contacted Petty to ask about the no trespassing notice and to see how it could be resolved so she could attend her granddaughters' events.

61.    Rather than resolve the matter, on or about January 2020, Plaintiff was served another no trespassing warning for ABC school which was signed by Chimene Johnson.  Plaintiff was told by Ashley Webb of the FCSO at the time Plaintiff signed the warning that it was issued at the direction of Tracy Yoder.

62.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**FIRST AMENDMENT RETALIATION**
**Against FRANKLIN COUNTY SCHOOL BOARD**

63.    Paragraphs 1-4, 8, 16-62 above are incorporated herein by reference. This count is pled in the alternative.

64.    This count sets forth a claim against Defendant Franklin County School Board for the violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech when she

complained, in part, about Superintendent Yoder's bullying of students, unapproved expenditures, and audio recording teachers without their consent or knowledge. Plaintiff's statements and reports were on matters of public concern, as outlined in part above.

65.     After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above by Yoder, and Plaintiff's protected conduct was the motivating factor behind the retaliatory actions, consisting of, in part, Plaintiff's termination from Eagletree, her termination from the Franklin County School Board, the trespass warnings and other actions described in part above.

66.     Defendant Yoder's actions in refusing to allow Plaintiff to work for Franklin County Schools, firing her, ordering Principal Rudd to write Plaintiff up without cause, terminating Plaintiff and trespassing Plaintiff from all of Franklin County School Board Property is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising First Amendment right to free speech/expression.

67.     Yoder took all actions complained of herein as the final policymaker for the Franklin County School Board Yoder.  Her decisions were not subject to any review or to any meaningful review.

68.    The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of her First Amendment right to free speech/expression.

69.    Yoder was the final policymaker for the Franklin County Schools at the time all actions set forth herein occurred.

70.    At all times material hereto, Defendant was a person under the laws applicable to this Count and acted under color of law.

71.    As a direct and proximate cause of those actions, for which Franklin County School Board is responsible, Plaintiff has been damaged, which damages include: mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff is entitled to injunctive relief.

## COUNT II
## FIRST AMENDMENT RETALIATION
### Against TRACI MOSES YODER

72.    Paragraphs 1-3, 5, 9-62 above are incorporated herein by reference. This count is pled in the alternative.

73.    This count sets forth a claim against Defendant TRACI MOSES YODER for the violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech when she

complained, in part, about Superintendent Yoder's bullying of students, unapproved expenditures, and audio recording teachers without their consent or knowledge. Plaintiff's statements and reports were on matters of public concern, as outlined in part above.

74.    After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above, and Plaintiff's protected conduct was the motivating factor behind the retaliatory actions described both above and below.

75.    Defendant Yoder's actions, including without limitation causing Plaintiff to be fired from other employers, firing her, ordering Principal Rudd to write Plaintiff up without cause, terminating Plaintiff and trespassing Plaintiff from all of Franklin County School Board Property is the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising First Amendment right to free speech/expression.

76.    The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of her First Amendment right to free speech/expression.

77.    At all times material hereto, Defendant was a person under the laws applicable to this Count and acted under color of law.

78.    As a direct and proximate cause of those actions, for which Franklin County School Board is responsible, Plaintiff has been damaged, which damages include: mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff seeks punitive damages in this count.

**COUNT III**
**FIRST AMENDMENT RETALIATION**
**Against APALACHICOLA BAY CHARTER SCHOOL ("ABC School")**

79.    Paragraphs 1-3, 6, 9-14, 38, 57, 59-62 above are incorporated herein by reference. This count is pled in the alternative.

80.    This count sets forth a claim against Defendant ABC School for the violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983.

81.    Plaintiff engaged in constitutionally protected speech when she complained, in part, about Yoder's bullying and disparate treatment of students and faculty members, cheating on standardized tests, and threating her teaching assistant Carla Cates with physical harm. Plaintiff's statements and reports about Yoder were on matters of public concern, as outlined in part above.

82.    After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above, and Plaintiff's protected speech was the motivating factor behind the retaliatory actions set forth above.

83.    The retaliatory actions were taken against Plaintiff as alleged herein by this Defendant by Principal Johnson and Yoder, on ABC School's behalf, both of whom were final policymakers as their decisions were not subject to any meaningful review.

84.    The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of her First Amendment right to free speech/expression.

85.    At all times material hereto, Defendant was a person under the laws applicable to this Count and acted under color of law.

86.    As a direct and proximate cause of those actions, for which ABC school is responsible, Plaintiff has been damaged, which damages include: mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff gives notice of her intention to amend to seek punitive damages against Defendant.

<u>**COUNT IV**</u>
<u>**FIRST AMENDMENT RETALIATION**</u>
**Against EAGLETREE TECHNOLOGIES**

87.    Paragraphs 1-3, 7, 15-38, and 62 above are incorporated herein by reference. This count is pled in the alternative.

88.     This count sets forth a claim against Defendant Eagletree Technologies the violation of Plaintiff's First Amendment rights, brought through 42 U.S.C. §1983. Plaintiff engaged in constitutionally protected speech when she complained, in part, about Superintendent Yoder's unapproved expenditures, audio recording teachers without their consent or knowledge and other matters set forth herein. Plaintiff's statements and reports were on matters of public concern, as outlined in part above.

89.     After engaging in protected speech as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above, and Plaintiff's protected conduct was the motivating factor behind the retaliatory actions, consisting of, in part, Plaintiff's termination by Kevin Ward and Yoder, both of whom were final policymakers as their decisions were not subject to any meaningful review.

90.     Defendant Yoder's actions include acting in conjunction with Kevin Ward of Eagletree Technologies to terminate Plaintiff as a result of the exercise of her First Amendment right to free speech/expression.  As a result of the association with Yoder, this Defendant was a person under the laws applicable to this Count and acted under color of law.

91.     Alternatively, Yoder ordered Kevin Ward to terminate Plaintiff, and he complied, which removed any choice by Ward in firing Plaintiff.

92.    Alternatively, Yoder, on behalf of the School Board, and Ward, on behalf of Eagletree, were in a symbiotic relationship resulting in the constitutional violation, i.e., Plaintiff being fired because of her protected Constitutional speech. In other words, the School Board contracted with Eagletree to provide all of its technology equipment and services and even provided a full-time employee, Plaintiff, to be stationed at the consolidated Franklin County School Board. Yoder and Ward acted together, in concert, to fire Plaintiff for her protected speech.

93.    The above actions were taken in violation of Plaintiff's clearly established rights under the First Amendment to the United States Constitution to be free from retaliation motivated by the exercise of her First Amendment rights to free speech/expression.

94.    As a direct and proximate cause of those actions, for which Eagletree Technologies is responsible, Plaintiff has been damaged, which damages include: mental anguish, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff gives notice of her intention to amend to seek punitive damages against Defendant.

**COUNT V**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**Against TRACI MOSES YODER**

95.    Paragraphs 1-3, 5, 15-38 are re-alleged and incorporated herein by reference.

96.    This count is brought against Defendant for tortious interference with Plaintiff's business relationship with Eagletree Technologies. For purposes of this count alone, at all times pertinent hereto, Yoder was acting outside the course and scope of her employment as Superintendent.

97.    Plaintiff had, at all times pertinent hereto, an employment relationship with Eagletree. Defendant knew of Plaintiff's business relationship and intentionally and unjustifiably interfered with that relationship.

98.    Defendant used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and her business and employment relationship with Eagletree.

99.    The actions by Defendant were malicious and were intended to harm Plaintiff in Plaintiff's business relationship.  Defendant's actions did, in fact, harm Plaintiff's relationships with third parties. Defendant was not a party to the business relationship with Eagletree that has suffered and/or been destroyed by the Defendant.

100.    As a direct and proximate result of the actions and inactions of Defendant described in part above, Plaintiff has incurred damages including without

limitation lost wages and benefits, Plaintiff's reputation has been substantially damaged and he has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain and suffering, and other tangible and intangible damages, which are likely to continue and increase in the future.

## COUNT VI
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### Against the FRANKLIN COUNTY SCHOOL BOARD

101.    Paragraphs 1-4, 8, 15-38 are re-alleged and incorporated herein by reference.

102.    This count is brought against Defendant for tortious interference with Plaintiff's business relationships with Eagletree Technologies. For purposes of this count alone, at all times pertinent hereto, Yoder was acting inside the course and scope of her employment as Superintendent.

103.    Plaintiff had, at all times pertinent hereto, an employment relationship with Eagletree. Defendant knew or should have known of Plaintiff's business relationship with Eagletree and intentionally and unjustifiably interfered with that relationship.

104.    Defendant used false statements and unjustified actions described in part above to detrimentally affect Plaintiff and her business and employment relationship.

105.   The actions by Defendant were intended to harm Plaintiff in Plaintiff's business relationships.  Defendant's actions did, in fact, harm Plaintiff's relationship with Eagletree and she was fired. Defendant was not a party to the business relationship between Plaintiff and Eagletree.

106.   As a direct and proximate result of the actions and inactions of Defendant described in part above, Plaintiff has incurred damages including without limitation lost income and benefits, Plaintiff's reputation has been substantially damaged and he has been embarrassed; Plaintiff has incurred significant emotional distress and mental pain and suffering, and other tangible and intangible damages, which are likely to continue and increase in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished to all counsel of record by CM/ECF this 19th day of September, 2022.

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox