IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STACEY HERRINGTON,

    **Plaintiff,**

v.                                      Case No. 4:22-cv-295-AW-MAF

FRANKLIN COUNTY SCHOOL
BOARD, et al.,

    **Defendants.**

_____/

## ORDER GRANTING MOTIONS TO DISMISS

Stacey Herrington repeatedly accused Traci Moses Yoder of unethical conduct while the two worked together in the Franklin County school system. In this lawsuit, Herrington claims the Franklin County School Board, EagleTree Technologies, and Yoder unlawfully retaliated against her because of that speech.

All Defendants moved to dismiss Counts Three through Six of the first amended complaint. After I dismissed those claims with leave to amend, ECF No. 35, Herrington amended and added new allegations. ECF No. 39 (SAC); *see also e.g.*, ECF No. 53 at 2-7 (listing the changes). But the second amended complaint's core facts remain substantially the same as those summarized in the first dismissal order. *See* ECF No. 35 at 1-2.

All Defendants again moved to dismiss Counts Four through Six for the same reasons as before. ECF Nos. 42, 43. Unlike before, Yoder asserts qualified immunity

1

as to Count Two's First Amendment claim.[1] This order addresses both pending motions.[2]

## I.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts are accepted as true and viewed in a light most favorable to the nonmovant. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## II.

Count Two is a § 1983 First Amendment claim against Yoder. It alleges Yoder retaliated against Herrington by (1) causing Herrington to be fired as EagleTree's FCSB liaison, (2) ordering a school principal "to write Plaintiff up" when FCSB employed Herrington as a substitute, (3) firing Herrington from the substitute

---

[1] The FCSB does not challenge Herrington's First Amendment retaliation claim against it (Count One).

[2] Herrington voluntarily dismissed her only claim against the ABC School (Count Three), ECF No. 56, and the court denied as moot the ABC School's motion to dismiss, ECF No. 58.

position, and (4) issuing a no-trespassing warning forbidding Herrington from all FCSB property. SAC ¶ 84.

As noted above, Yoder asserts qualified immunity. In doing so, she has the initial burden to show her conduct was within her discretionary authority. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022) (citing *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019)). The question is whether Yoder pursued "legitimate, job-related function[s]" through "means that were within [her] power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004); *see also Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019).

If Yoder meets that burden, I must dismiss Count Two if it "fails to allege the violation of a clearly established constitutional right." *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (citing *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991)). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what [she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *accord Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (describing the "salient question" as whether the law gave defendants "fair warning" the challenged conduct was unconstitutional). It is unnecessary to decide if a complaint plausibly alleges a constitutional violation "where it is plain that the right is not clearly established."

3

*Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009)).

I first conclude that the alleged retaliatory actions were within Yoder's discretionary authority as FCSB superintendent. All relate to Yoder's administrative and supervisory authority over the district's school system and personnel. That a superintendent would have such authority is a commonsense matter. It is also supported by state statutes. *See* Fla. Stat. § 1001.32; *id.* § 1001.49. And as for when Herrington worked for EagleTree—a private contractor performing services for FCSB—Yoder possessed broad authority to "see that . . . services are provided according to contract." *Id.* § 1001.51(11)(i).

Herrington's response includes a heading that says "Yoder's Acts are not Discretionary," ECF No. 53 at 10, but it never develops a substantive response. Instead, Herrington merely says that Yoder is not entitled to immunity even if her actions were authorized "because she violated Plaintiff's clearly established constitutional rights." *Id.* at 10-11. But whether Yoder's actions were unlawful does not determine whether they were within her discretionary authority. "For present purposes, the question is whether the official's actions are of the sort that fall within the 'arsenal of powers' the official is given to accomplish her goals." *Carruth*, 942 F.3d at 1055 (cleaned up) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Thus, courts "do not ask whether the defendants acted illegally,

because framed that way, the inquiry is no more than an untenable tautology." *Id.* (cleaned up).

Because Yoder has satisfied her initial burden, the burden "rests on [Herrington] to show that qualified immunity is not appropriate." *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Herrington has not satisfied that burden.

A First Amendment retaliation claim requires showing protected speech, adverse conduct affecting that speech, and a causal connection. *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (citing *Bailey v. Wheeler*, 843 F.3d 473, 480-81 (11th Cir. 2016)). Herrington bases her retaliation claim on speech during three different periods: (1) while both Herrington and Yoder worked at the ABC School, SAC ¶¶ 9-15, (2) while Herrington worked for EagleTree and Yoder for the FCSB, *id.* ¶¶ 16-44, and (3) while both worked for the FCSB, *id.* ¶¶ 45-70.

Herrington's speech was protected only if made as a private citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006).[3] Herrington

---

[3] The parties' briefing assumes this rule governs Herrington's second category of speech—while she worked for FCSB's *private* contractor. *See* ECF No. 42 at 6, 9-10; ECF No. 53 at 11. I do the same for purposes of this order. I note, however, that it is unclear whether Herrington's speech while with EagleTree actually should be treated as that of a public employee. Courts do sometimes treat private parties' speech as that of public ones, *see Bd. of Cnty. Cmm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 670, 673 (1996) (where the government ended its relationship with an independent contractor), but the court is not aware of any controlling law doing so

points to her allegation that she spoke as a private citizen on a matter of public concern, insisting that this is a "fact" I must take as true. ECF No. 53 at 11 (citing SAC ¶ 44). But whether speech is protected is a question of law for the court to resolve. *Carollo v. Boria*, 833 F.3d 1322, 1329 (11th Cir. 2016) (citing *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015)). The complaint's allegation—which is essentially that her speech satisfies *Garcetti*—is a legal conclusion that I need not accept as true. *See Iqbal*, 556 U.S. at 663-64.

The question is whether Herrington has alleged *facts* that would show a violation of clearly established law. The facts Herrington alleges do not get there. "[C]ourts have found speech that concerns internal administration of the educational system and personal grievances" relates to an employee's job duties and is not protected. *Alves*, 804 F.3d at 1166 (quoting *Maples v. Martin*, 858 F.2d 1546, 1152 (11th Cir. 1988)). Herrington's alleged speech can reasonably be viewed as falling into those categories of unprotected speech. She only made internal complaints to coworkers about Yoder's unethical practices or bullying. *See, e.g.*, SAC ¶¶ 10, 12, 14, 17, 22-23, 33, 35; *cf. Alves*, 804 F.3d at 1168 (noting that an employee's failure

---

under facts materially similar to this case. In any event, that uncertainty is an independent reason why the protected status of Herrington's speech with EagleTree was not clearly established.

to voice concerns publicly is relevant, although not dispositive).[4] Or Herrington complained about things that simply made her job duties harder or that made her uncomfortable, things like email hacking, "IEPs [] folded up inside folders and [] not being followed which impacted student achievement," and insufficient "materials to teach the students." SAC ¶¶ 49-51; *see also id.* ¶¶ 28-29, 55-59 (describing the hacking of Herrington's own email account).

Herrington has not shown it was "plain, clear, [or] obvious" that the speech was protected. *Snider*, 344 F.3d at 1328. She has therefore not shown that Yoder's alleged retaliatory conduct violated clearly established First Amendment rights. *Badia v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998). Accordingly, Yoder is entitled to qualified immunity. I will dismiss Count Two.[5]

---

[4] On this point, Herrington's speech is materially dissimilar from that in *Carollo* (which she cites in responding to the ABC School's motion but not Yoder's). ECF No. 55 at 9-13. The *Carollo* plaintiff's speech included reporting co-officials' illegal conduct to law enforcement agencies and making other "public disclosures about the same." 833 F.3d at 1325.

[5] To be sure, I do not decide prong one of qualified immunity—whether Herrington plausibly alleges a constitutional violation. Instead, I conclude only that she failed to satisfy her burden of showing Yoder was on "fair notice" the speech was protected. *See Hope*, 536 U.S. at 741.

### III.

Count Four is a § 1983 First Amendment claim against EagleTree. I earlier dismissed this count for failure to plausibly allege EagleTree acted under color of state law when it fired Herrington. ECF No. 35 at 8-11. It still fails to do that.

For starters, Herrington alleged no new facts supporting either the public-function or nexus/joint action theories of § 1983 liability. *See* ECF No. 54 at 2-7 (listing the "meaningful changes" to her earlier complaint). She has thus failed to state a claim under those theories for the same reasons as before. *See* ECF No. 35 at 8-9 (applying the public-function test); *id.* at 10 (applying the nexus test).

Herrington did somewhat try to bolster her theory that Yoder coerced EagleTree into firing her. *See* ECF No. 54 at 5-6 (citing SAC ¶¶ 39-43). But the changes boil down to more conclusory assertions. *See, e.g.*, SAC ¶ 40 ("Yoder made up [a] claim . . . to justify directing Ward to terminate Plaintiff."); *id.* ¶ 41 ("Yoder directed that Plaintiff's then employer, Eagletree Technologies, fire Plaintiff. There was no legitimate reason . . . ."); *id.* ¶ 43 ("The only trouble Plaintiff may have caused were her reports of wrongdoing . . . ."). So as before, Herrington's "allegations on this score are pled at the highest order of abstraction." *Carruth*, 942 at 1055-56 (analogizing similar allegations to those in *Iqbal*); *see* ECF No. 35 at 9-10.

## IV.

Count Five is a state-law claim alleging Yoder tortiously interfered with Herrington and EagleTree's business relationship. Count Six presents the same claim against the FCSB.

I originally dismissed Count Five for two reasons. First, I concluded that some of Yoder's allegedly tortious statements were privileged under Florida law. ECF No. 35 at 5-6. Other statements, such as racist comments about Herrington's son's girlfriend were not necessarily privileged but did not support a claim of tortious interference. *Id.* at 6. I directed Herrington to plead "additional facts to overcome the privilege or otherwise support a claim." *Id.* at 6-7.

Rather than plead any meaningful new facts,[6] Herrington again relies on a new conclusory allegation that Yoder lacked authority to fire Herrington from EagleTree but "directed that." ECF No. 53 at 14 (citing SAC ¶ 42); *cf. Carruth*, 942 F.3d at 1055-56. That is not enough to state a plausible tortious interference claim against Yoder.

---

[6] Herrington does allege additional factual content, for example about the circumstances of the racist comments. *See* SAC ¶ 34. But that additional information does not tie anything Yoder said or did to Herrington's employment with EagleTree. (Moreover, although it makes no difference for present purposes, the new facts suggest Yoder did not even make the racist comment but was a bystander who laughed in response.)

9

I originally dismissed Count Six because Yoder's challenged conduct (for which the FCSB is allegedly liable) "can occur only from bad faith or malicious or wanton and willful conduct." ECF No. 35 at 7-8 (quoting *Gregory v. Miami-Dade County*, 719 F. App'x 859, 873 (11th Cir. 2017)). That being the only reasonable inference, Florida Statute § 768.28(9)(a) barred the claim. Again rather than offering any new, well-pleaded facts to state a plausible claim, Herrington added only another legal conclusion to her complaint. *See* ECF No. 53 at 21 (citing SAC ¶ 111).

Herrington insists that she can plead claims in the alternative, that she can allege for Count Five that Yoder acted outside the scope of her employment and allege the opposite for Count Six. *See* ECF No. 53 at 17-22. Rule 8 certainly allows such alternative pleading. But it does not absolve Herrington of having to plausibly allege that Yoder's statements were not "in connection with [her] official duties" as to Count Five. *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970). Likewise, it does not absolve Herrington of plausibly alleging Yoder's conduct was not "outside the course and scope of her or his employment or committed in bad faith or with malicious purpose" for Count Six. Fla. Stat. § 768.28(9)(a).[7]

---

[7] Herrington's argument impliedly assumes that the privilege and § 768.28(9)(a) immunity are mutually exclusive. They are not. The privilege asks whether a statement was connected to the official's duties *notwithstanding* the speaker's subjective purpose. *Cassell v. India*, 964 So. 2d 190, 195 (Fla. 4th DCA 2007). Section 768.28(9)(a), though, considers *both* whether the conduct was within the scope of employment *and* its subjective purpose (e.g., bad faith, malice). Because

Because she has added only conclusory allegations to support Counts V and VI, I must dismiss those counts.

## CONCLUSION

The motions to dismiss (ECF Nos. 42, 43) are GRANTED. Count Two of the second amendment is dismissed based on qualified immunity. Counts Four, Five, and Six of the second amended complaint are DISMISSED on the merits. The case will proceed on Count One against the FCSB, which must answer the complaint within fourteen days.

The stay of discovery (ECF No. 50) is LIFTED, and Herrington and the FCSB may begin discovery immediately. Within 21 days, they must confer and file a proposed litigation schedule. That schedule should anticipate a trial date no later than March 2024. If the parties cannot agree on a litigation schedule, they should file a joint notice stating each side's position.

SO ORDERED on May 26, 2023.

s/ *Allen Winsor*
United States District Judge

---

the statute is disjunctive, alleging that an employee acted within the scope of employment is not itself enough to defeat § 768.28(9)(a) immunity.